UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Wanda Elaine Cardinal, and<br>Christopher Cardinal, | Civil No.: 12cv2921 (MJD/SER) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| Scott Walker,<br>J.B. Van Hollen,<br>Department of Corrections,<br>St. Croix Co.,<br>St. Croix Co. Attorney,<br>City of Hudson,<br>Marty Jensen,<br>Hudson Fire Chief,<br>Hudson City Attorney,<br>Hudson City Council,<br>Joseph Starkey,<br>Emily Dexter,<br>Officer Hartman,<br>Officer Rieger,<br>Officer Rankin,<br>Officer Rangour,<br>Mike O'Keefe, and<br>Alan Burchill, | |
| Defendants. | |

---

This case is before the undersigned United States Magistrate Judge on Plaintiffs' application for leave to proceed *in forma pauperis*, ("IFP"), as permitted by 28 U.S.C. § 1915(a)(1). (Docket No. 2.) The matter has been referred to this Court for a report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends denial of Plaintiffs' IFP application and summary dismissal without prejudice of this action.

1

## I. BACKGROUND

Plaintiff Wanda Cardinal, and her husband Christopher Cardinal, have filed an amended complaint, (Docket No. 3),[1] seeking redress for physical and psychological injuries they allegedly sustained in January 2010. The events giving rise to Plaintiffs' lawsuit stem from an alleged encounter between Christopher and Defendant Joseph Starkey, a Wisconsin probation officer. On or about January 20, 2010, Christopher allegedly met with Defendant Starkey in Hudson, Wisconsin, while Wanda waited outside. After Christopher left the meeting and got into Plaintiffs' car, Wanda could tell he was "upset with Starkey." (Amended Complaint, p. 12, ¶ 11.)

After the meeting with Starkey, Plaintiffs drove around "to explore more of Hudson." (*Id.*, p. 13, ¶ 11.) While Plaintiffs were driving around in Hudson, police officer, Defendant Officer Rieger pulled them over. Defendant Rieger allegedly approached Plaintiffs' car with "OC spray in his hand." (*Id.*, ¶ 12.) Wanda confronted Defendant Rieger and said, "'Please identify yourself.'" (*Id.*) Defendant Rieger allegedly yelled at Wanda, telling her "'It's none of your God Damn business; you'll find out soon enough.'" (*Id.*) Defendant Rieger's response allegedly put Wanda "into a panic mode," and she "kept saying to him... 'Please don't rape me.'" (*Id.*) Wanda was scared and in pain. (*Id.*, p. 14, ¶ 12.) According to the complaint, Defendant Rieger then "deployed the OC spray" into Plaintiffs' car, and Wanda then heard Christopher say "'Grandpa, if you ever fucking hit my mother again, I'll kill you.'" (*Id.*)

---

[1] Plaintiffs commenced this action on November 7, 2012, by filing their original complaint, (Docket No. 1), and their IFP application. Before any further action was taken in this matter, they filed their amended complaint, (Docket No. 3). Plaintiffs were entitled to amend their complaint "once as a matter of course" pursuant to Fed. R. Civ. P. 15(a), so their amended complaint has been properly filed and is now the operative pleading in this case.

At that point, other squad cars pulled up near Plaintiffs' car.  By then, Christopher allegedly "was in a flashback moment," and he "had a blank stare on his face."  (*Id*., ¶ 13.)  One of the police officers, Defendant Hartman, allegedly tried to extricate Christopher from the car. (*Id*.)  Another police officer, Defendant Rieger, allegedly wrapped his arms around Christopher's neck while trying to pull him from the car.  (Id.)  After Christopher was removed from the car, three of the officers allegedly "pushed & pulled him to the back of the car," and one of the officers allegedly said, "'Get the tazers.'" (*Id*., p. 15, ¶s 14-15.)

Wanda allegedly told the police officers not to use a tazer on Christopher, because he has a heart murmur, but one of the officers allegedly told her, "We don't fucking care." (*Id*.)   One of the officers then allegedly deployed the tazer device for "[s]omewhere between 3-4 minutes," and Wanda allegedly heard Christopher "do the death rattle on his own tongue," and saw him "hit the ground with a thud."  (*Id*.)   Plaintiffs allege that while Christopher was "twitching on the ground, three officers proceeded to stomp his head, [and] his ribs [and] kick him in the stomach and in the low back."  (*Id*., p. 16, ¶ 15.)  After one of the officers removed Wanda from the car, she allegedly saw Christopher lying on the ground with probes from the tazer attached to his body. Wanda allegedly did not know whether Christopher was alive or dead until she heard him say, "'I can't feel my legs.'"  (*Id*., ¶ 16.)

After the alleged tazer incident, Christopher was taken to the hospital.  Wanda allegedly asked to be taken to the hospital as well, so she could be treated for injuries caused by the spray used on her, and by handcuffs that were placed tightly on her wrists.  (*Id*., pp. 16-17, ¶ 17.) Instead of being taken to the hospital, Wanda allegedly was taken to jail, where she was "given a cold water hose to clean an oil base spray off."  (*Id*., p. 17, ¶ 18.)  The cold water allegedly caused "a severe reaction to the spray," and Wanda allegedly started having trouble breathing. (*Id*.)  Wanda allegedly was forced to remain in jail for three days, without her glasses or inhaler,

3

and without being given a bond, or being charged with an offense. (*Id*., p. 18, ¶ 18.) Plaintiffs allege that their experiences with the police officers in Hudson, Wisconsin, caused "uncontrollable Post Traumatic Stress Disorder," "panic/anxiety attacks," and other psychological problems. (*Id*., ¶ 19.)

Plaintiffs are presently attempting to sue Defendant Starkey, (the probation officer), and the various Hudson police officers who were involved in the incident described in their complaint. They are also attempting to sue the City of Hudson, the Hudson City Council, the Hudson City Attorney, the Hudson Police Chief, the Hudson Fire Chief, the Mayor of Hudson, St. Croix County, the St. Croix County Attorney, the Wisconsin Attorney General, and the Governor of Wisconsin.[2] The "Request for Relief" section of the amended complaint indicates that Plaintiffs are seeking a judgment that would compel Defendants to change some of their alleged practices and procedures. Plaintiffs are also seeking $250,000,000.00 to compensate them for their alleged injuries.

## II. DISCUSSION

An IFP application will be denied, and the action will be dismissed, if the applicant filed a complaint that fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (*per curiam*).

In this case, the Court finds that Plaintiffs failed to plead an actionable claim for relief that can be entertained in the District of Minnesota. All of the claims presented in Plaintiffs' complaint are based on events that allegedly occurred in Wisconsin. Furthermore, all of the named Defendants are located in Wisconsin. The Court must therefore consider whether Plaintiffs' claims against the named Defendants should be summarily dismissed for lack of

---

[2] It is unclear why Plaintiffs are attempting to sue these other Defendants.

personal jurisdiction.

A two-step analysis is used to determine whether a federal court can properly exercise personal jurisdiction over a defendant. *Northrup King v. Compania Productora Semillas*, 51 F.3d 1383, 1387 (8th Cir. 1995). First, the court must consider whether personal jurisdiction can be exercised properly under the law of the forum state; more specifically, whether jurisdiction exists under the state's "long-arm statute." *Id*. "Second, the court's exercise of jurisdiction must be consistent with the due process clause of the Fourteenth Amendment." *Id*. "Minnesota [state] courts have concluded that if a non-resident's contacts with [the] State satisfy due process, the Minnesota long-arm statute also is satisfied." *Id*. Thus, whether this Court can exercise personal jurisdiction over the named Defendants without violating the protections afforded by the due process clause is dispositive.

"Due process allows a court to exercise personal jurisdiction over a non-resident defendant only if doing so is consistent with traditional notions of fair play and substantial justice." *Id*., citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The plaintiff must demonstrate that the non-resident defendant has had sufficient contacts with the forum state such that the defendant "'should reasonably anticipate being haled into court there.'" *Northrup King*, 51 F.3d at 1387, citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980).

In this case, the amended complaint does not describe any contact or connection of any kind between the named Defendants and Minnesota. Indeed, Plaintiffs alleged that they brought this action in Minnesota, rather than Wisconsin, only because they "don't have a mode of transportation" to Wisconsin, and they "don't trust the State of Wisconsin." (Amended Complaint, p. 3, ¶ 6.) No facts are alleged show that any of the claims in the amended complaint

are based on anything any of the named Defendants actually did within the State of Minnesota.³ Thus, no proper basis for exercising personal jurisdiction over any of the named Defendants in Minnesota exists.

When an IFP applicant's complaint does not include any allegations supporting personal jurisdiction, the court may, *sua sponte*, dismiss the action summarily. *Sanders v. United States*, 760 F.2d 869, 871-72 (8th Cir. 1985); *see also, Martin-Trigona v. Smith*, 712 F.2d 1421, 1424 (D.C.Cir. 1983). Alternatively, the Court may transfer the action to a district where personal jurisdiction might exist, pursuant to 28 U.S.C. § 1631.

Section 1631 provides "[w]henever a civil action is filed in a court... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action... to any other such court in which the action... could have been brought at the time it was filed." A transfer under § 1631, rather than dismissal, is appropriate "when a plaintiff in good faith filed in the wrong court and the statute of limitations would have run before he could refile properly." *Gunn v. United States Dep't of Agriculture*, 118 F.3d 1233, 1240 (8th Cir. 1997), *cert. denied*, 522 U.S. 1111 (1998), citing *In re Apex Oil Co.*, 884 F.2d 343, 346 (8th Cir. 1989); *Hempstead County and Nevada County Project v. United States E.P.A.*, 700 F.2d 459, 463 (8th Cir. 1983). Thus, in order to determine whether the "interests of justice" require that a case be transferred, rather than dismissed, a court must consider whether dismissal of the action will affect the plaintiff's vulnerability to a statute of limitations defense. If the plaintiff can still refile his action in a proper forum before the statute of limitations expires, then a transfer pursuant to § 1631 is unnecessary, and the case can simply be dismissed. *Gunn*, 118 F.3d at 1240 (transfer pursuant

---

³ The complaint includes a vague reference to Christopher's extradition to Wisconsin, (apparently from Minnesota), but there are no factual allegations that could support any cause of action against any of the named Defendants based on any such proceedings.

to § 1631 not required where Plaintiff could still bring a timely action in a proper court); *cf. Gray v. Lewis & Clark Expeditions, Inc.*, 12 F. Supp.2d 993, 999 (D.Neb. 1998) (case transferred to court that had personal jurisdiction where it appeared that the statute of limitations expired shortly after the case was filed in the transferor court).

Here, Plaintiffs have not clearly identified the legal theory on which their lawsuit is based.[4] It is clear, however, that Plaintiffs' claims arose sometime in January 2010. Therefore, if Plaintiffs' current claims, (whatever they might be), are subject to a statute of limitations of three years or more, they still have ample time to commence a new action in Wisconsin. On the other hand, if Plaintiffs' claims are subject to a statute of limitations of two years or less, then their claims are already time-barred. Consequently, the Court finds no reason to believe, (and Plaintiffs have not suggested), that dismissing this action could have any statute of limitations significance. For this reason, the Court concludes that it would be preferable to dismiss Plaintiffs' current lawsuit (without prejudice) rather than transfer this action to another district pursuant to § 1631.

## III. CONCLUSION

For the reasons discussed above, the Court recommends that this action be summarily dismissed, without prejudice, for lack of personal jurisdiction.[5] Having determined that this

---

[4] Plaintiffs assert that federal subject matter jurisdiction exists based on diversity of citizenship, presumably because they are Minnesota residents, and all named Defendants are Wisconsin residents. (Amended Complaint, p. 3, ¶ 3.) Plaintiffs are **not** asserting any claims based on federal law, (*id*., ¶s 3-4), which presumably means they are seeking relief based on some **state** statute or common law doctrine. However, Plaintiffs have not identified any specific state law on which their lawsuit purportedly is based.

[5] Dismissing this action for lack of personal jurisdiction over the named Defendants will **not** preclude Plaintiffs from pursuing their claims in a new action brought in a court that can properly exercise personal jurisdiction over the named Defendants, (presumably the United States District Court for the Western District of Wisconsin, or a Wisconsin **state** court). However, Plaintiffs have done a very poor job of presenting their claims, and it is virtually certain that their

7

action should be summarily dismissed, the Court will further recommend that Plaintiffs' IFP application be denied. *See Sanders*, *supra*; 28 U.S.C. § 1915(e)(2)(B)(ii). The Court will likewise recommend that Plaintiffs' motion for appointment of counsel, (Docket No. 4), be denied.

## IV. RECOMMENDATION

Based upon the foregoing and all of the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Plaintiffs' application for leave to proceed *in forma pauperis*, (Docket No. 2), be **DENIED**;

2. Plaintiffs' motion for appointment of counsel, (Docket No. 4), be **DENIED**; and

3. This action be summarily **DISMISSED WITHOUT PREJUDICE**.


Dated: January 11, 2013            *s/Steven E. Rau*
                                   Steven E. Rau
                                   U.S. Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **January 22, 2013**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.

---

current pleading could not survive intact, even if it were filed in a forum where personal jurisdiction exists. As previously mentioned, Plaintiffs have not identified any **legal** basis for their lawsuit. Furthermore, most of the Defendants listed in the caption of Plaintiffs' amended complaint are never even mentioned in any of their substantive allegations, so they obviously have not pleaded sufficient facts to support any actionable claim for relief against those Defendants. Given the patent inadequacy of Plaintiffs' current pleading, it would not be prudent to simply refile that pleading in another court.